HALK *v.* SONCINI.

4-7601.                                    187 S. W. 2d 960

Opinion delivered May 14, 1945.

*Roy Mitchell* and *Murphy & Wood,* for appellant.

*Martin, Wootton & Martin, James R. Campbell, Richard M. Ryan* and *David L. Mallory,* for appellee.

GRIFFIN SMITH, Chief Justice. "Dino's Store for Men" was an equal partnership composed of Dino Soncini and Clyde O. Halk. They rented quarters in a Hot Springs building owned by Dr. D. S. Barton.

The appeal is from a decree on Soncini's complaint directing dissolution of the partnership, followed by public sale June 14, 1944. Soncini and Halk were the only bidders. The property went to Soncini for $36,100. This was $6,969 above inventory of assets. Three days after the sale Halk, who had been paid for his interest, filed a second amendment to his answer and cross complaint. Soncini had made Dr. Barton a party to his suit, alleging that this defendant, as landlord, had served written notice of the termination of a three year lease. Dr. Barton admitted he had given notice the lease would not be renewed when it expired October 31, 1943, but contended his offer to allow occupancy on a month to month basis had been accepted by Soncini.

In his answer and cross complaint (as distinguished from the second amendment of June 17, 1944) Halk had alleged that the Barton notice was a collusory transaction in that it had been prepared by Soncini, this being part of a scheme between the two conspirators to place tenancy beyond Halk, whose final cause of action was predicated upon the allegation that Barton's threat of repossession was intended to discourage him (Halk) from bidding on the partnership assets, while leaving Soncini in the advantageous position of one who had been assured that if his bid prevailed he would have the right to continue under the month-to-month agreement in which Halk was not named.

Although frequent disagreements between the partners had occurred, they did not reach an impasse until

Soncini was notified he would be called for military service. Halk, also, was subject to the draft. When the two became associates in 1938, Halk was not an experienced merchant. Soncini appears to have been skilled in the trade; hence it was agreed that for a time Halk would not be announced as a partner. Purchases were made in Soncini's name, or in the name of Dino's Store for Men. Checks were written by Soncini, and in many other respects he assumed the status of manager, if not sole owner. He insists that the three-year lease, taken in his name, was available for Halk's inspection, and that neither deception nor concealment was intended when the extension on a month-to-month basis was procured without mention of Halk's interest.

There are acts and circumstances indicating that during the last few months each partner was suspicious of the other's conduct, although this did not involve suggestions of dishonesty in respect of financial transactions.

In his second amendment to the answer and cross complaint Halk alleged that but for the conspiracy between Barton and Soncini the good will or going value of the business would have brought an additional eight thousand dollars. This, however, appears to be speculative. Halk's principal complaint is that he feared Barton would not allow continued use of the premises, and for that reason he was restricted in bidding, notwithstanding that his competition forced Soncini to offer $36,100. Halk accounts for this competition on the ground that he was willing to take a reasonable chance on procuring the lease. While this is not his exact language, it is the effect.

A direction in the Court's order dissolving the partnership is that ". . . the property to be sold . . . shall consist of [the] entire stock of merchandise, furniture, furnishings, fixtures, bills receivable, name and good will."

The transcript is voluminous, consisting of 328 pages. We have stated as concisely as practicable what the controversy is, and have indicated the general trend of testimony. This has not been done to test the decree,

*de novo.* It is not necessary to say that a preponderance of the evidence was for or against the appellee. The question is, Did the Chancellor err in not reopening the cause when the second amendment to the complaint and intervention was filed after the sale had been consummated? Our view is that this was a matter within the Court's discretion. Since dismissal of the pleading was not arbitrary, it follows that the decree must be affirmed.